### IN THE UNITED STATES  DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | **Criminal No. 07-48-01 (EGS)** |
| v. | | |
| | : | |
| WILLIAM POYNTER, et al. | : | |
| Defendant | : | |

### DEFENDANT WILLIAM F. POYNTER'S MOTION TO DISMISS THE INDICTMENT FOR VIOLATION OF HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS

Pursuant to Rule 12(b)(3) of the Federal Rules of Criminal Procedure, defendant William F. Poynter, (hereinafter "Poytner") through counsel, respectfully moves for an order dismissing the Indictment charging him with conspiracy to launder monetary instruments in violation of 18 U.S.C. 1956(h) on the grounds that the complaint, indictment and warrant of arrest were procured by intentional misstatement and deliberate misrepresentation in violation of his constitutional right to due process of law.

For the reasons addressed in the accompanying Memorandum, Mr. Poynter respectfully requests that the Court dismiss the Indictment.

Respectfully submitted,

s/CARRIE CRAWFORD, ESQ.
Imhoff & Associates
P.O. Box 961

1

Laurel, MD 20725
(202) 723-3075
*Attorney for Defendant*

**IN THE UNITED STATES  DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Criminal No. 07-48-01 (ES)** |
| v. | | |
| | : | |
| **WILLIAM POYNTER, et al.** | : | |
| **Defendant** | : | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS FOR VIOLATION OF HIS**
**CONSTITUTIONAL RIGHT TO DUE PROCESS**

Defendant William F. Poytner hereby submits this memorandum in support of

the above-referenced motion.

## I.  INTRODUCTION

The United States has charged Defendant with one count of conspiracy to launder

monetary instruments  in violation of 18 U.S.C.§ 1956((h) and its attendant forfeiture

allegation. The Indictment recites the statutory language of 18 U.S.C.§1956 that

defendants' conspired "with the intent to conceal and disguise the nature and source of

property believed to be the proceeds of specified unlawful activity, did knowingly

conduct and attempt to conduct a financial transaction affecting interstate or foreign

commerce involving property represented by a law enforcement officer and others at the

direction of law enforcement to be proceeds of specific unlawful activity to wit: narcotics

trafficking."  It  alleges that between November 17, 2005 and December 20, 2006

Defendant conspired with James Franklin Smith (hereinafter "Smith" and Christopher

Cook (hereinafter "Cook") to launder money believed to be drug proceeds. Defendants'

allegedly accomplished this by conducting a financial transaction affecting interstate

commerce. Defendant Poynter allegedly knew that the money was "drug money"

because of representations from undercover law enforcement officials and had agreed to

launder said money.

<b><u>ARGUMENT</u></b>

**A. Defendant's Due Process Right was Violated by the Creation of Intentionally Misleading Evidence**

All persons, under the due process clause of the Fifth and Fourteenth

Amendments to the Constitution, have a right not to have false evidence intentionally

presented against them by persons acting under color of law. Miller v. Pate, 386 U.S. 1

(1967); Washington v. Wilmore (4th Cir.) 2005. A court has the inherent power to

dismiss an indictment where a denial of due process is established. People v. Torres,

245 Ill App. 3d 297, 300 (1993). The affidavit of Agent Steven Soggin dated February

28, 2007 and the associated investigative reports, particularly Report No. 8, dated July 7,

2006 contains numerous material statements which are half-truths, misstatements and a

deliberate misrepresentation of factual occurrences. These documents show that reports

were routinely prepared with at best, loose representations of events as recorded by the

government and used to increase the apparent weight against Poynter as a so-called "CPA

of the 'underworld'". (See paragraph 5 of Soggin Affidavit, Exhibit 1). Officers of the

government knew or should have known that the said statements were artfully crafted and

improperly used to obtain an indictment against Poynter in this matter. All of these

reports were prepared with the intention to obtain the subject indictment from the grand

jury by any means and to be used by the prosecutor in establishing this case. Such

4

creative reporting was a flagrant abuse of the judicial process and the constitutional rights

of Poynter to due process.

In the Affidavit in support of the complaint and warrant under which Poynter was

arrested, Agent Steven Soggin specifically states in paragraph number 8:

> On June 27, 2006, an undercover ICE special agent (UCA) and CS met with
> Poynter and Smith.  The purpose of the meeting was to provide Poynter and
> Smith with U.S. currency to launder.  The meeting took place at Poynter's
> business at 9320 Annapolis Road, Lanham, Maryland.  Smith was given $40,000
> in United States Currency ; $37,500 to be laundered, and $2,500 for Poynter and
> Smith's Services. … Shortly after the illegal money transfer, all of the parties
> returned to Poynter's office.  An envelope containing $2,500 in United States
> Currency was handed to Mr. Poynter, as his fee.  Written on the outside of the
> envelope were the words "Mr. Poynter" and "$2,500."  Poynter then handed the
> envelope to Smith. (See Exhibit 1).

Discovery materials provided to Defense Counsel includes copies of three (3) CDs,

numbers 13, 14 and 15 and titled respectively, "13. CPA-CS SA522DC", "14. CPA-UCA

wire" and "15. BMW Wire".(Exhibit 2)  The three referenced tapes are the recorded

communication reflected in Agent Soggins complaint affidavit at paragraph number 8.  A

review of these communications makes it quite clear that there was no prearranged

meeting at Mr. Poynter's office that day.  It is clear from the tapes that the so-called

meeting was actually held in the offices of  a "Residential Lending" which is housed on

the third floor in the same building as Poynter's office (See Exhibit 3).  Both co-

defendants Frank Smith and Chris Cook worked for Residential Lending.  This critical

factor is never mentioned throughout any of the so-called conspiratorial meetings.  The

UCA never entered Poynter's office that day.   The Confidential Informant (CI)  on CD

13 at 15:36 discusses with co-defendant Frank Smith a fee for his services in his office of

employment.  Poynter, the same tape  at 16:16  shows, was present in Smith's office prior

to the arrival of the UCA and left that office by himself leaving the UCA with Smith

discussing a money transfer.

The affidavit further states that "all parties returned to Poynter's office".  There is no evidence that this occurred at all according to the taped recordings presented in the government's evidence for this day.  According to the taped evidence, Poynter never received any envelope in his office or otherwise on June 27, 2006 as the affidavit alleges.  Nor did he hand the referenced "envelope" to Smith as alleged in the affidavit.  All three tapes from June 27, 2006 support a conclusion that the UCA showed up at the office building unannounced not as a pre-arranged meeting as the affidavit states.

In almost every instance, investigative reports prepared for this matter improperly characterize and misrepresent material facts to support the intended indictment. Investigative Report number 8 (Exhibit 4) at page 3, paragraph 1 states that the confidential informant called Poynter earlier on June 27, 2006 to schedule the later recorded 1:30 pm meeting.  No evidence of any such calls are evident or have been provided to the defense.  In fact, the taped meeting provided does not support this statement.  The report further notes that Poynter's vehicle and Smith's vehicle are "outside of Poynter's business". The same building where all defendants  have worked for a number of years.   Further at page 3, paragraph 3, the same report notes that the so-called meeting took place "at the CPA's business".  This statement is proven false by the government's taped recording of the event.  The report goes on to document at paragraph 5 that "Smith carrying the bag of cash given him by the UCA, walked out of the CPA's business" and at page 4, paragraph 2 that "Smith, the UCA, and the SA-522-DC departed the bank and returned to the CPA's business where they again met with Poynter".  The government represents in this report that "the consensually recorded conversations reflect

Poynter acknowledging the deposit of money that Smith made at the bank" and that "as later told to S/SA Soggin by the UCA, the UCA handed a white letter size envelope to Poynter, the CPA, as a commission for the cash deposited and wire-transferred" that day. Lastly, that the UCA and SA-522-DC then observed Poynter handing the envelope [containing the $2,500 fee] to Smith.   None of these referenced events appear to have occurred and are refuted by the government's own recorded evidence.

The statements, reports and the affidavit submitted by officials of the government in this matter are tainted and can not be relied upon absent indisputable evidence of the factual details contained therein.  Without such evidence, the defense is critically prejudiced.  Review of the investigator's notes used in preparing the official report may be the only means available to confirm or dispute any documented discrepancy.  United States v. Beckford, 962 F.Supp. 780 803 (E.D. Va. 1967), United States v. Johnson, 383 U.S. 169 (1969).  Defense can not decipher at this point which version of the investigation contains the facts as they actually occurred.  The government has built a case upon half-truths and material misstatements intended to cast Poynter in a pre-determined role as "CPA to the underworld". It's own  recorded evidence disputes the on-going investigative reports prepared.  Allowing such evidence to be used without verifying its authenticity now would be a mockery of the Fourteenth Amendment and a violation of Poynter's constitutional right to due process.

**B.  The Government Used Entrapment to Arrange Any Participation of Poynter in the Commission of the Alleged Crime**

Poynter further contends and can show that his involvement in this matter was also procured through the inducement of government agents.

An entrapment defense has two elements. The defendant must prove: "(1) government inducement of the crime, and (2) a lack of predisposition on the part of the defendant to engage in the criminal conduct." United States v. Wright, 921 F.2d 42, 44 (3d Cir. 1990) (citing, inter alia, Mathews v. United States, 485 U.S. 58,63 (1988)). "After the defendant has made this showing, . . . the government then has the burden of proving beyond a reasonable doubt that it did not entrap the defendant." Id. (internal quotation omitted).

Poynter asserts that the government can not produce sufficient evidence to show any predisposition to commit the criminal act of money laundering prior to their agents approaching him in this scheme.  Although entrapment is usually a question for the jury, the Court found entrapment as a matter of law in Jacobson v. United States, 503 U.S. 550 (1992), where the defendant ordered child pornography after months of repeated mailings and communications from the government.  In the instant case, where the investigative reports and affidavit of the government agents involved are seriously called into question, a review of the totality of the circumstances will support defendant's entrapment assertions.

## CONCLUSION

For the foregoing reasons, Mr. Poynter respectfully requests that the Court:

a.  Dismiss the Indictment in its entirety; and/or in the alternative;

b.   Issue an order excluding the use of any testimony related to any deliberately misleading information contained in the government's reports and documentation;

c.  Order the government to release any grand jury proceedings, investigative

notes, memoranda and other evidence including telephone logs to establish the

truth or falsity contained in the subject affidavit and investigative reports and

d.   Allow defendant's entrapment defense.


Respectfully submitted,


s/CARRIE CRAWFORD, ESQ.
Imhoff & Associates
P.O. Box 961
Laurel, MD 20725
(202) 723-3075


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that on September 14, 2007 I electronically filed the

foregoing document with the Clerk of the Court, for the District of Columbia

using the electronic case filing system of the court.  The electronic case filing

system sent a "Notice of Electronic Filing" to the U.S. Attorney of Record,

Anthony Scarpelli.


s/Carrie Crawford

9