**IN THE UNITED STATES  DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**


**UNITED STATES OF AMERICA**        :

                                    :   **Criminal No. 07-48-01 (EGS)**

    **v.**                          :

                                    :

**WILLIAM POYNTER, et al.**         :

        **Defendant**               :

**DEFENDANT WILLIAM F. POYNTER'S MOTION TO DISMISS THE**
**INDICTMENT FOR VIOLATION OF HIS CONSTITUTIONAL RIGHTS**
**TO DUE PROCESS**

Pursuant to Rule 12(b)(3) of the Federal Rules of Criminal Procedure,

defendant William F. Poynter, (hereinafter "Poytner") through counsel, respectfully

moves for an order dismissing the Indictment charging him with conspiracy to launder

monetary instruments in violation of 18 U.S.C. 1956(h) on the grounds that the

complaint, indictment and warrant of arrest were procured by intentional misstatement

and deliberate misrepresentation in violation of his constitutional right to due process of

law.

For the reasons addressed in the accompanying Memorandum, Mr. Poynter

respectfully requests that the Court dismiss the Indictment.

Respectfully submitted,



s/CARRIE CRAWFORD, ESQ.
Imhoff & Associates
P.O. Box 961

1

Laurel, MD 20725
(202) 723-3075
*Attorney for Defendant*

**IN THE UNITED STATES  DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : |
| | :   **Criminal No. 07-48-01 (ES)** |
| **v.** | |
| | : |
| **WILLIAM POYNTER, et al.** | : |
| **Defendant** | : |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS FOR VIOLATION OF HIS**
**CONSTITUTIONAL RIGHT TO DUE PROCESS**

Defendant William F. Poytner hereby submits this memorandum in support of

the above-referenced motion.

## I.  INTRODUCTION

The United States has charged Defendant with one count of conspiracy to launder

monetary instruments  in violation of 18 U.S.C.§ 1956((h) and its attendant forfeiture

allegation. The Indictment recites the statutory language of 18 U.S.C.§1956 that

defendants' conspired "with the intent to conceal and disguise the nature and source of

property believed to be the proceeds of specified unlawful activity, did knowingly

conduct and attempt to conduct a financial transaction affecting interstate or foreign

commerce involving property represented by a law enforcement officer and others at the

direction of law enforcement to be proceeds of specific unlawful activity to wit: narcotics

trafficking."  It  alleges that between November 17, 2005 and December 20, 2006

Defendant conspired with James Franklin Smith (hereinafter "Smith" and Christopher

Cook (hereinafter "Cook")  to launder money believed to be drug proceeds.  Defendants'

allegedly accomplished this by conducting a financial transaction affecting interstate

commerce.  Defendant Poynter allegedly knew that the money was "drug money"

because of  representations from undercover law enforcement officials and had agreed to

launder said money.

## ARGUMENT

### A.  Defendant's Due Process Right was Violated by the Creation of Intentionally Misleading Evidence

All persons, under the due process clause of the Fifth and Fourteenth

Amendments to the Constitution, have a right not to have false evidence intentionally

presented against them by persons acting under color of law.  Miller v. Pate, 386 U.S. 1

(1967); Washington v. Wilmore (4th Cir.) 2005.  A court has the inherent power to

dismiss an indictment where a denial of  due process is established.  People v. Torres,

245 Ill App. 3d 297, 300 (1993).    The affidavit of Agent Steven Soggin dated February

28, 2007 and the associated investigative reports, particularly Report No. 8, dated July 7,

2006 contains numerous material statements which are half-truths, misstatements and a

deliberate misrepresentation of  factual occurrences.  These documents show that reports

were routinely prepared with at best, loose representations of events as recorded by the

government and used to increase the apparent weight against Poynter as a so-called "CPA

of the 'underworld'".  (See paragraph 5 of Soggin Affidavit, Exhibit 1).  Officers of the

government knew or should have known that the said statements were artfully crafted and

improperly used to obtain an indictment against Poynter in this matter.  All of these

reports were prepared with the intention to obtain the subject indictment from the grand

jury by any means and to be used by the prosecutor in establishing this case.  Such

creative reporting was a flagrant abuse of the judicial process and the constitutional rights of Poynter to due process.

In the Affidavit in support of the complaint and warrant under which Poynter was arrested, Agent Steven Soggin specifically states in paragraph number 8:

> On June 27, 2006, an undercover ICE special agent (UCA) and CS met with Poynter and Smith. The purpose of the meeting was to provide Poynter and Smith with U.S. currency to launder. The meeting took place at Poynter's business at 9320 Annapolis Road, Lanham, Maryland. Smith was given $40,000 in United States Currency ; $37,500 to be laundered, and $2,500 for Poynter and Smith's Services. … Shortly after the illegal money transfer, all of the parties returned to Poynter's office. An envelope containing $2,500 in United States Currency was handed to Mr. Poynter, as his fee. Written on the outside of the envelope were the words "Mr. Poynter" and "$2,500." Poynter then handed the envelope to Smith. (See Exhibit 1).

Discovery materials provided to Defense Counsel includes copies of three (3) CDs, numbers 13, 14 and 15 and titled respectively, "13. CPA-CS SA522DC", "14. CPA-UCA wire" and "15. BMW Wire".(Exhibit 2)  The three referenced tapes are the recorded communication reflected in Agent Soggins complaint affidavit at paragraph number 8.  A review of these communications makes it quite clear that there was no prearranged meeting at Mr. Poynter's office that day.  It is clear from the tapes that the so-called meeting was actually held in the offices of  a "Residential Lending" which is housed on the third floor in the same building as Poynter's office (See Exhibit 3).  Both co-defendants Frank Smith and Chris Cook worked for Residential Lending.  This critical factor is never mentioned throughout any of the so-called conspiratorial meetings.  The UCA never entered Poynter's office that day.   The Confidential Informant (CI)  on CD 13 at 15:36 discusses with co-defendant Frank Smith a fee for his services in his office of employment.  Poynter, the same tape  at 16:16  shows, was present in Smith's office prior to the arrival of the UCA and left that office by himself leaving the UCA with Smith

discussing a money transfer.

The affidavit further states that "all parties returned to Poynter's office". There is no evidence that this occurred at all according to the taped recordings presented in the government's evidence for this day. According to the taped evidence, Poynter never received any envelope in his office or otherwise on June 27, 2006 as the affidavit alleges. Nor did he hand the referenced "envelope" to Smith as alleged in the affidavit. All three tapes from June 27, 2006 support a conclusion that the UCA showed up at the office building unannounced not as a pre-arranged meeting as the affidavit states.

In almost every instance, investigative reports prepared for this matter improperly characterize and misrepresent material facts to support the intended indictment. Investigative Report number 8 (Exhibit 4) at page 3, paragraph 1 states that the confidential informant called Poynter earlier on June 27, 2006 to schedule the later recorded 1:30 pm meeting. No evidence of any such calls are evident or have been provided to the defense. In fact, the taped meeting provided does not support this statement. The report further notes that Poynter's vehicle and Smith's vehicle are "outside of Poynter's business". The same building where all defendants have worked for a number of years. Further at page 3, paragraph 3, the same report notes that the so-called meeting took place "at the CPA's business". This statement is proven false by the government's taped recording of the event. The report goes on to document at paragraph 5 that "Smith carrying the bag of cash given him by the UCA, walked out of the CPA's business" and at page 4, paragraph 2 that "Smith, the UCA, and the SA-522-DC departed the bank and returned to the CPA's business where they again met with Poynter". The government represents in this report that "the consensually recorded conversations reflect

Poynter acknowledging the deposit of money that Smith made at the bank" and that "as later told to S/SA Soggin by the UCA, the UCA handed a white letter size envelope to Poynter, the CPA, as a commission for the cash deposited and wire-transferred" that day. Lastly, that the UCA and SA-522-DC then observed Poynter handing the envelope [containing the $2,500 fee] to Smith.   None of these referenced events appear to have occurred and are refuted by the government's own recorded evidence.

The statements, reports and the affidavit submitted by officials of the government in this matter are tainted and can not be relied upon absent indisputable evidence of the factual details contained therein.  Without such evidence, the defense is critically prejudiced.  Review of the investigator's notes used in preparing the official report may be the only means available to confirm or dispute any documented discrepancy.  United States v. Beckford, 962 F.Supp. 780 803 (E.D. Va. 1967), United States v. Johnson, 383 U.S. 169 (1969).  Defense can not decipher at this point which version of the investigation contains the facts as they actually occurred.  The government has built a case upon half-truths and material misstatements intended to cast Poynter in a pre-determined role as "CPA to the underworld". It's own  recorded evidence disputes the on-going investigative reports prepared.  Allowing such evidence to be used without verifying its authenticity now would be a mockery of the Fourteenth Amendment and a violation of Poynter's constitutional right to due process.

**B.  The Government Used Entrapment to Arrange Any Participation of Poynter in the Commission of the Alleged Crime**

Poynter further contends and can show that his involvement in this matter was also procured through the inducement of government agents.

An entrapment defense has two elements. The defendant must prove: "(1) government inducement of the crime, and (2) a lack of predisposition on the part of the defendant to engage in the criminal conduct." United States v. Wright, 921 F.2d 42, 44 (3d Cir. 1990) (citing, inter alia, Mathews v. United States, 485 U.S. 58,63 (1988)). "After the defendant has made this showing, . . . the government then has the burden of proving beyond a reasonable doubt that it did not entrap the defendant." Id. (internal quotation omitted).

Poynter asserts that the government can not produce sufficient evidence to show any predisposition to commit the criminal act of money laundering prior to their agents approaching him in this scheme.  Although entrapment is usually a question for the jury, the Court found entrapment as a matter of law in Jacobson v. United States, 503 U.S. 550 (1992), where the defendant ordered child pornography after months of repeated mailings and communications from the government.  In the instant case, where the investigative reports and affidavit of the government agents involved are seriously called into question, a review of the totality of the circumstances will support defendant's entrapment assertions.

## **CONCLUSION**

For the foregoing reasons, Mr. Poynter respectfully requests that the Court:

a.  Dismiss the Indictment in its entirety; and/or in the alternative;

b.   Issue an order excluding the use of any testimony related to any deliberately misleading information contained in the government's reports and documentation;

c.  Order the government to release any grand jury proceedings, investigative

notes, memoranda and other evidence including telephone logs to establish the

truth or falsity contained in the subject affidavit and investigative reports and

d.  Allow defendant's entrapment defense.


Respectfully submitted,


s/CARRIE CRAWFORD, ESQ.
Imhoff & Associates
P.O. Box 961
Laurel, MD 20725
(202) 723-3075




**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY, that on September 14, 2007 I electronically filed the

foregoing document with the Clerk of the Court, for the District of Columbia

using the electronic case filing system of the court.  The electronic case filing

system sent a "Notice of Electronic Filing" to the U.S. Attorney of Record,

Anthony Scarpelli.



s/Carrie Crawford

AO 91 (Rev. 5/85) Criminal Complaint

# United States District Court
## For The District of Columbia

UNITED STATES OF AMERICA

v.

WILLIAM F. POYNTER
DOB: 10/25/49

**FILED**

FEB 2 8 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## CRIMINAL COMPLAINT

CASE NUMBER:  07 - 074 - M - 01.

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and

belief.  From on or about May 17, 2005 until February 28, 2007  in  WASHINGTON  county, in the _____  District of

___COLUMBIA___  defendant(s) did, (Track Statutory Language of Offense)

knowingly combine, conspire, confederate and agree together to commit money laundering under Title 18, United
States Code, Section 1956.

in violation of Title ____18____  United States Code, Section(s) _____1956(h)_____ .

I further state that I am ___SPECIAL AGENT STEVEN T. SOGGIN___ , and that this complaint is

based on the following facts:

### SEE ATTACHED STATEMENT OF FACTS

Continued on the attached sheet and made a part hereof:            ☒ Yes   ☐ No

Signature of Complainant

SPECIAL AGENT STEVEN T. SOGGIN
U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT

Sworn to before me and subscribed in my presence,

FEB 28 2007

Date            ALAN KAY            at          Washington, D.C.
                U.S. MAGISTRATE JUDGE              City and State

Name & Title of Judicial Officer            Signature of Judicial Officer

## AFFIDAVIT IN SUPPORT OF
## SUPPORT OF AN ARREST WARRANT

1. I am a Special Agent of the United States Department of Homeland Security, U.S. Immigration and Customs Enforcement (ICE), empowered under the authority of Title 19, United States Code, Section 1589a.   I am assigned to the anti-money laundering unit of the Washington/Baltimore High Intensity Drug Trafficking Area (HIDTA), whose function is to identify, disrupt, and dismantle sources of illicit funding occurring within the United States and abroad.

2. I have served as a special agent with the U.S. Customs Service, and then ICE, since July 2002. Prior to my current position, I served three years as a Special Agent for the Inspector General of the United States Department of Transportation in Washington, D.C. From 1992 to 1999, I served as an Inspector and program manager with the U.S. Customs Service in its field and headquarters offices. I have received training and gained experience on matters involving violations of smuggling and diversion of money and merchandise, financial crimes, computer fraud and intellectual property rights.  I earned a Bachelor of Science Degree in Political Science and a Master of Science in Information Systems.

3. I make this affidavit in support of an application for an arrest for William Poynter, James Franklin Smith, and Christopher Cook.

## BACKGROUND OF INVESTIGATION

4. In November 2005, ICE Special Agents obtained information at a meeting in Washington, D.C., between a real estate agent and a confidential source (CS) that William POYNTER, a certified public accountant (CPA), is a person whom the CS could approach to launder drug proceeds. The CS discussed with the realtor the need to launder six million dollars in illegal proceeds and a need to disguise the source of the funds to avoid detection by authorities. The realtor advised the CS that POYNTER is a person who can establish offshore bank accounts and companies for the purpose of laundering money and hiding proceeds of criminal activity.  The real estate agent referred to POYNTER as the CPA of the "underworld." The realtor put CS in contact with POYNTER for the purpose to discuss the laundering of purported dug proceeds.

5. On or about November 18, 2005, POYNTER met with the CS at POYNTER's accounting firm at 9320 Annapolis Road, Suite B, Lanham, Maryland 20706. The meeting was consensually recorded. POYNTER introduced to the CS a person named, "Chris," (later identified as Christopher Cook), whom POYNTER identified as a mortgage broker. During the meeting, POYNTER and Chris were told by CS that he had $500,000 of drug proceeds that he needed to be laundered. POYNTER proposed numerous investment schemes to launder the CS's money. In one scheme, POYNTER said he could open up a non-profit company in which no taxes would be paid. A second scheme that POYNTER proposed was the creation of bank accounts to launder money and the movement of the money through "dummy companies." A third scheme POYNTER offered was to launder the CS's money through a church.  POYNTER noted that the church is out of business, but he would be able to make it appear that drug money was actually proceeds generated from the church. During this meeting, POYNTER and Chris provided the CS documents suggesting different ways in which to place and layer funds, including a fictitious company to utilize, complete with an

IRS number.

6. There were several meeting between the CS and POYNTER. During some of these meetings, POYNTER introduced CS to other individuals who would assist I laundering the drug proceeds. One of the individuals introduced to CS by POYNTER was James Franklin SMITH.

7. Prior to April 28, 2006, SMITH had agreed to lauder approximately $30,000 in United States Currency for CS. On April 28, 2006, CS, MPD Detective Robinson, and ICE S.A Bryon Bragg, who were posing as a part of the drug organization, met SMITH. The parties met in the Wendy's Restaurant parking lot next to Mr. Poynter's office. SMITH agreed to deposit $28,400 in purported drug proceeds for a fee of $1600. Wiring instructions were given to SMITH as was $30,000 ($28,400 to be deposited and $1,400 for Mr. Smith's services) in United States Currency. SMITH entered the Bank of America located at 9436 Lanham-Severn Road, Seabrook, Maryland, and deposited $28,400 into an account in the name of the True Faith Deliverance Church. The bank employee prepared a Currency Transaction Report in SMITH's name. On April 29, 2006, SMITH returned to the Bank of America and completed the wire transfer of $28,355 ($28,400 less a $45.00 bank wire fee) to the bank account in London, England.

8. On June 27, 2006, an undercover ICE special agent (UCA) and CS met with POYNTER and SMITH. The purpose of the meeting was to provide POYNTER and SMITH with U.S. Currency to launder. The meeting took place at POYNTER's business at 9320 Annapolis Road, Lanham, Maryland. SMITH was given $40,000 in United States Currency; $37,500 to be laundered, and $2,500 for POYNTER and SMITH's services. That day, SMITH went to the Bank of America located at 9436 Lanham-Severn Road, Seabrook, Maryland, and deposited the $37,500 into an account in the name of the True Faith Deliverance Church. The bank employee prepared a Currency Transaction Report in Mr. Smith's name. Shortly after the illegal money transfer, all of the parties returned to POYNTER's office. An envelope containing $2,500 in United States Currency was handed the envelope to Mr. POYNTER, as his fee. Written on the outside of the envelope were the words "Mr. Poynter" and "$2,500." POYNTER then handed the envelope to SMITH.

9. On August 8, 2006, the UCA and CS met again with POYNTER and SMITH, at POYNTER's business. The purpose of the meeting was to provide POYNTER and SMITH with $60,000 in U.S. Currency, purported to be from the sale of cocaine. Shortly thereafter, while at the CPA's office, the UCA retrieved from a duffle bag containing $60,000 in U.S. Currency. In an envelope was $3,500 in commissions with the hand-written words, "Mr. Poynter. . . $3,500." The UCA handed to POYNTER the envelope containing $3,500 cash and POYNTER accepted it. The CPA discussed the commission with SMITH, his business partner, and then handed the envelope to SMITH. SMITH then took some of the money out of the envelope and handed it to POYNTER, at which time POYNTER placed the money in his pocket. SMITH then wet to the BB&T Bank located at 9395 Lanham-Severn Road, Lanham, Maryland. SMITH deposited $56,500 in a bank account in the name of the True Faith Deliverance Church.

Steven T. Soggin

SWORN AND SUBSCRIBED THIS FEB 2 8 2007 OF February, 2007.

U.S. MAGISTRATE JUDGE
ALAN KAY
U.S. MAGISTRATE JUDGE

**U.S. Department of Justice**

United States Attorney

*District of Columbia*

Judiciary Center
555 Fourth St. N.W.
Washington, D.C. 20001

March 21, 2007

Carrie Crawford, Esquire
Counsel for William D. Poynter
625 Indiana Avenue, N.W., Suite 500
Washington, D.C. 20004

Thomas Abbenante, Esquire
Counsel for James Franklin Smith
1919 Pennsylvania Avenue, N.W., Suite 200
Washington, D.C. 20006

Cynthia Katkish, Esquire
Counsel for Christopher Cook
601 Pennsylvania Avenue, N.W.
900-S pmb 221
Washington, D.C. 20004

Re:   **United States v. William D. Pynter**
      **United States v. James Franklin Smith**
      **United States v. Christopher Cook**
      Case No. 07-48-01, Case No. 07-48-02, Case No. 07-48-03

Dear Defense Counsel:

I am writing to provide you with additional discovery in the above-captioned matter pursuant to Fed. R. Crim. Pro. 16.

Copies of the following CD discs are enclosed:

| 1 | 11/18/05 | 11-18-05 (CS mtg at CPA's Business w Chris).wav |
| 2 | 11/29/05 | 11-29-05 (Florida Ave Grille).wav |
| 3 | 12/07/05 | 12-07-05 (DC Mtg, Jay, Dr. Francis, CPA).wav |
| 4 | 03/17/06 | 03-17-06 (CS calls Poynter).wav |
| 5 | 04/13/06 | 04-13-06 (CS calls Poynter).wav |

| 6  | 04/18/06 | 04-18-06 (CS calls Poynter).wav |
|----|----------|--------------------------------|
| 7  | 04/24/06 | 04-24-06 (Agree to meet at CEIBA's).wav |
| 8  | 04/27/06 | 04-27-06 (Part1) Ceiba .wav |
| 9  | 04/27/06 | 04-27-06 (Part2) Ceiba .wav |
| 10 | 04/28/06 | 04-28-06 (Smith -Bank of America).EXE |
| 11 | 06/20/06 | 06-20-06 (CS mtg with Frank-CPA).wav |
| 12 | 06/22/06 | 06-22-06 (CS no meet with CPA).avi |
| 13 | 06/27/06 | 06-27-06 (CPA-CS SA522DC).wav |
| 14 | 06/27/06 | 06-27-06 (CPA-UCA wire).wav |
| 15 | 06/27/06 | 06-27-06 (BMW Wire). wav. |
| 16 | 08/01/06 | 08-01-06 (CS leaves mssg w CPA & Smith |
| 17 | 08/21/06 | 08-21-06 (CS and Smith).wav |
| 18 | 10/11/06 | 10-11-06 (CS mtg with Poynter at the Firm |
| 19 | 10/27/06 | 10-27-06 (CS mtg w UCA, CS).wma |
| 20 | 11/03/06 | 11-03-06 (UCA calls Cook, Pt. 1).wma |
| 21 | 11/03/06 | 11-03-06 (UCA calls Cook, Pt2).wma |
| 22 | 12/18/06 | 12-18-06 (Pt.1 UCA calls Cook).wav |
| 23 | 12/18/06 | 12-18-06 (Pt.2 UCA calls Cook).wav |
| 24 | 12/19/06 | 12-19-06 (UCA calls Cook).wav |
| 25 | 12/20/06 | 12-20-06 (UCA calls Cook).wav |
| 26 | 12/20/06 | 12-20-06 (UCA meets with Cook $5k).WA |
| 27 | 03/01/07 | 03-01-07 (Smith Int).wav |
| 28 | 03/01/07 | 03-01-07 (Cook Interview).wav |
| 29 | 03/01/07 | 03-01-07 (Poynter Int. #1).wav |
| 30 | 03/01/07 | 03-01-07 (Poynter Int. #2).wav, and |
| 31 | 030/1/07 | 03-01-07 (Poynter Int. #3).wav |

Copies of the following videos are enclosed:

1. 4-27-06, and
2. 10-27-06.

If you have any questions about the information provided above, you may contact me or Gregory Marshall at:

Anthony Scarpelli
Assistant United States Attorney
Office of the United States Attorney
555 Fourth Street, N.W., Room 4816
Washington, D.C. 20530
(202) 353-1679 Fax: (202) 514-8707
E-mail:  anthony.scarpelli@usdoj.gov

Gregory Marshall
Assistant United States Attorney
Office of the United States Attorney
555 Fourth Street, N.W., Room 4844
Washington, D.C. 20530
(202) 353-7557 Fax: (202) 514-8707
E-mail: gregory.marshall@usdoj.gov

Sincerely,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY

By: _____

Anthony Scarpelli
Assistant United States Attorney

cc:    Gregory Marshall, Assistant United States Attorney

3

Interview of James Franklin Smith                          2
March 1, 2007

1    MR. SOGGEN: Wanted to interview -- my name again is Steve Soggen

2    (phonetic). I am a special agent with U.S. Immigration and Customs Enforcement.

3    This is Technical Enforcement Officer Billy Bohm (phonetic) with U.S. Immigration

4    and Customs Enforcement. Just following up with what we were -- today's events,

5    wanted to ask what is your full name?

6         MR. SMITH: James Franklin Smith.

7         MR. SOGGEN: Date of birth?

8         MR. SMITH: 12-3-46.

9         MR. SOGGEN: Have you used any other dates of birth?

10        MR. SMITH: No.

11        MR. SOGGEN: Social security number?

12        MR. SMITH: 579-64-

13        MR. SOGGEN: 64.

14        MR. SMITH: 6002.

15        MR. SOGGEN: When was the first time you met Will Poynter?

16        MR. SMITH: Probably around three years ago?

17        MR. SOGGEN: Tell me about that.

18        MR. SMITH: When I came to work over there part-time.

19        MR. SOGGEN: Over where?

20        MR. SMITH: Residential Lending.

21        MR. SOGGEN: Residential Living?

22        MR. SMITH: Lending.

Interview of James Franklin Smith                    3
March 1, 2007

1    MR. SOGGEN: Lending. Where is Residential Lending located, in the

2  same building as Will Poynter?

3         MR. SMITH: Yeah, yeah.

4         VOICE: Third floor.

5         MR. SOGGEN: Third floor?

6         MR. SMITH: Yeah.

7         MR. SOGGEN: And how -- what did you do there? How were you

8  employed?

9         MR. SMITH: I was a part-time loan officer.

10         MR. SOGGEN: Oh, okay. Tell me about that.

11         MR. SMITH: Just provided loans for people, refinancing and purchase.

12         MR. SOGGEN: Okay. And then who owns Residential Lending? Who

13  is the owner of that?

14         MR. SMITH: Her name is Scott something.

15         MR. SOGGEN: And how did you come across Mr. Poynter?

16         MR. SMITH: Just in passing.

17         MR. SOGGEN: Okay. And have you ever been to his office?

18         MR. SMITH: Yes.

19         MR. SOGGEN: Okay. And why were you in his office?

20         MR. SMITH: He always has a nice looking girl there.

21         MR. SOGGEN: Oh, okay.

22         MR. SMITH: Nice looking one (unintelligible) for.

REQUESTED BY: SOGGIN, STEVEN T

O F F I C I A L   U S E   O N L Y

| DEPARTMENT OF HOMELAND SECURITY ICE | TECS ACCESS CODE 3 |
|---|---|
| R E P O R T   O F   I N V E S T I G A T I O N | PAGE    1 |
| | CASE NUMBER DC02BR06DC0006 |

TITLE: MONEY LAUNDERING BY CERTIFIED PUBLIC ACCOUNTANT

CASE STATUS:    INTERIM RPT

| REPORT DATE 070706 | DATE ASSIGNED 120105 | PROGRAM CODE 613 | REPORT NO. 008 |
|---|---|---|---|

RELATED CASE NUMBERS:

COLLATERAL REQ:

TYPE OF REPORT:
SURVEILLANCE REPORT / I/  INVESTIGATIVE FINDINGS

TOPIC: UNDERCOVER MEETING AND MONEY TRANSFER

SYNOPSIS:
On or around November 8, 2005, ICE special agents received information from
confidential source(s) alleging individuals in the Washington Metropolitan
area, including a certified public accountant and persons employed in the
financial services industry, are willing to create dummy companies for drug
dealers and launder money to overseas accounts in exchange for a fee.

This report of investigation details an ongoing undercover operation by
special agents of the U.S. Immigration & Customs Enforcement (ICE), a
transaction involving $40,000 in undercover ICE funds, and a subsequent wire
transfer from a U.S.-based church established by the target(s) of
investigation to an ICE SAC/DC undercover account in London, England.  This
case is under the umbrella of Operation Tortuga, a certified undercover
operation.

| DISTRIBUTION: SACDC CALN | SIGNATURE: SOGGIN        STEVEN    T   SENIOR SPEC AGENT |
|---|---|
| | APPROVED: LAVERY        DAVID      A   OI GRP SUPERVISOR |
| | ORIGIN OFFICE: DC WASHINGTON DC - SAC | TELEPHONE: 703 658 7821 |
| | | TYPIST: SOGGIN |

O F F I C I A L   U S E   O N L Y
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY
OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR
DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED
TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

O F F I C I A L   U S E   O N L Y

| DEPARTMENT OF HOMELAND SECURITY<br>ICE<br><br>R E P O R T   O F   I N V E S T I G A T I O N<br>C O N T I N U A T I O N | PAGE    2 |
| --- | --- |
| | CASE NUMBER DC02BR06DC0006 |
| | REPORT NUMBER: 008 |

CASE PROGRAM CODES:

6I3 CUC OP TORTUGA (DC)    6I3 CUC OP TORTUGA (DC)

O F F I C I A L   U S E   O N L Y
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY
OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR
DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED
TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

OFFICIAL USE ONLY

| DEPARTMENT OF HOMELAND SECURITY<br>ICE<br><br>REPORT OF INVESTIGATION<br>CONTINUATION | PAGE   3 |
|---|---|
| | CASE NUMBER DC02BR06DC0006 |
| | REPORT NUMBER: 008 |

DETAILS OF INVESTIGATION:

On June 27, 2006, an undercover ICE special agent and SA-522-DC met with two targets of investigation, William D. POYNTER, a certified public accountant (CPA) and his business associate, Frank SMITH, a purported church minister. Telephone calls earlier in the day placed by SA-522-DC to POYNTER established that POYNTER and his associate, SMITH, would be at the POYNTER's business in the afternoon.

At approximately 1:27 p.m., the UCA, SA-522-DC and surveillance units observed POYNTER's vehicle and SMITH's vehicle parked outside of POYNTER's business. POYNTER's vehicle is a Jeep Cherokee with Maryland license tag number 655M582 and SMITH's vehicle is a maroon Chrysler PT Cruiser with Maryland tag number JVJ192.

The undercover meeting took place at approximately 1:30 P.M. at the CPA's business, located at 9320 Annapolis Road, STE B, Lanham, Maryland, 20706. For integrity purposes, an ICE special agent conducted a "pat down" of SA-522-DC prior to and after the meeting in which SA-522-DC participated. POYNTER, SMITH, the UCA, and SA-522-DC were present in the meeting. ICE special agents and ICE task force officers assigned to the Washington/Baltimore High Intensity Drug Trafficking Area (HIDTA) electronically monitored the consensually recorded meeting and provided protection for the UCA, SA-522-DC and the $40,000 in undercover Government funds purported in previous meetings with the CPA and SMITH to be drug proceeds.

In the beginning of the meeting, SA-522-DC stated he/she recently returned from Mexico on business. The UCA was holding $37,500 in U.S. currency in a yellow plastic bag with red lettering noting the words, "Cozumel, Mexico." Without asking the UCA or SA-522-DC how much money the bag contained, Frank SMITH, the church minister, accepted the money from the UCA. SMITH, SA-522-DC and the CPA, discussed a fee for SMITH's handling of the cash. The $37,500 cash was separated in approximately 12 bundles of U.S. currency, consisting primarily of $20 dollar bills, folded in half and secured by rubber bands. Previous consensually recorded meetings at Ceiba's Restaurant in Washington, D.C., on April 27, 2006, and at other times, established to SMITH and POYNTER that money from SA-522-DC and his associates is from the sale of narcotics, including heroin.

SMITH, carrying the bag of cash given him by the UCA, walked out of the CPA's business along with SA-522-DC and the UCA and got into a vehicle driven by the UCA. At approximately 1:48 P.M., surveillance units followed the vehicle from

OFFICIAL USE ONLY
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

O F F I C I A L   U S E   O N L Y

| DEPARTMENT OF HOMELAND SECURITY ICE | PAGE    4 |
|---|---|
| | CASE NUMBER DC02BR06DC0006 |
| R E P O R T   O F   I N V E S T I G A T I O N   C O N T I N U A T I O N | REPORT NUMBER: 008 |

the CPA's business.  Surveillance observed SA-522-DC seated in the front
passenger seat and SMITH seated in the back.  Surveillance units followed the
vehicle heading in the direction of the Bank of America branch located at 9436
Lanham-Severn Road, Seabrook, Maryland, approximately one mile from the CPA's
business.  SA-522-DC discussed with SMITH wiring instructions for the money he
carried and provided SMITH with wiring instructions for an overseas account in
London, England.  This is the same bank at which surveillance agents
previously observed Frank SMITH on April 28, 2006, making a $28,400 cash
deposit and wire transfer to London of money purporting to be drug proceeds.
SMITH exited the vehicle with the bag of cash in the bright yellow plastic bag
and entered the bank.  The UCA and SA-522-DC then followed SMITH into the bank
and sat in the waiting area while SMITH stood in line with the yellow bag
containing the money.

A few minutes later, Senior Special Agent Soggin entered the bank posing as a
customer and also  physically observed SMITH standing in line with the yellow
plastic bag.  SMITH wore an orange shirt with black stripes, blue jeans,
glasses, and brown shoes.  SMITH stood in line and met with a male bank teller
(later identified as teller #0003) for approximately 30 minutes.  The teller
provided SMITH with a Bank of America deposit slip that reflected the
following:

Tran 00104      06/27/2006      14:19
Entity NMD    cc  5018119 Tlr  00003
Account  ********7461
R/T# 540520134
Deposit               $37,500.00

At approximately 2:22 P.M., SMITH, the UCA, and SA-522-DC departed the bank
and returned to the CPA's business where they again met with POYNTER.  During
this time, SMITH is briefly away making a photocopy of the deposit slip for
SA-522-DC.  SA-522-DC later receives a copy of the above noted deposit slip.
The consensually recorded conversations reflect POYNTER acknowledging the
deposit of money that SMITH made at the bank.  SA-522-DC handed POYNTER some
foodstuff from Mexico as a souvenir.  SA-522-DC introduced the UCA to POYNTER,
noting the UCA is SA-522-DC's "affiliate."  As later told to S/SA Soggin by
the UCA, the UCA handed a white letter size envelope containing $2,500 to
SA-522-DC who in turn handed the money to POYNTER, the CPA, as a commission
for the cash deposited and wire-transferred to London, England.  Prior to the
meeting, S/SA Soggin hand-wrote on the outside of the envelope the words, "Mr.
Poynter . . . $2,500."  The envelope containing the $2,500 consisted of 125
bills, all in $20 dollar bills that S/SA Braggs and S/SA Soggin previously
counted earlier in the day.  The UCA and SA-522-DC then observed POYNTER
handing the envelope to SMITH.  The enveloped containing the $2,500 cash
represents a commission of approximately 6.6% of the amount of money SMITH

O F F I C I A L   U S E   O N L Y
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY
OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR
DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED
TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

OFFICIAL USE ONLY

| DEPARTMENT OF HOMELAND SECURITY<br>ICE | PAGE    5 |
|---|---|
| | CASE NUMBER DC02BR06DC0006 |
| REPORT OF INVESTIGATION<br>CONTINUATION | REPORT NUMBER: 008 |

wire transferred to an overseas account in London, England.

The consensually recorded conversation reflects POYNTER stating to the UCA and SA-522-DC he is undergoing a Federal background check as part of an application he submitted for a Federal Government contract.  POYNTER stated his background check was supposed to only take 30 days but that it has been extended to 90 ninety days for reasons unknown.  POYNTER notes in the consensually recorded conversation that he wants to be real careful about any dealings with SA-522-DC and the UCA because of his ongoing background checks. He is more worried about the current activities of the UCA and SA-522-DC than himself.  The recorded conversation reflects the following:

> POYNTER:  "If something happens to you all, the first thing they're going to look at is me, you know what I'm saying?
>
> SA-522-DC:  "Right. . . we'd just jump on a fucking plane. . . (laughter)"
>
> POYNTER:  "That's right, and I can't go nowhere."
>
> SA-522-DC:  "We'll try to pick you up(laughter)"
>
> POYNTER:  "What am I going to do with my houses and shit?  You know what I'm saying?  I just can't up and move like that.  You can do that. I can't.  I wish I could."
>
> UCA:  "You never know until you try."
>
> POYNTER:  "Oh, if I had to . . . I will go.  You understand?  But I'm not trying to do that just at this point.
>
> SA-522-DC:  "Right."

POYNTER and SA-522-DC then inquired about "Chris," another associate of POYNTER's whom SA-522-DC observed earlier in the afternoon near POYNTER's office and who met previously with POYNTER and SA-522-DC at the POYNTER's business on November 11, 2005.

POYNTER and SA-522-DC then discuss previous matters of business noted from a previous meeting to include the establishment of bank accounts.  SA-522-DC stated his desire to POYNTER to have the CPA open up two or three accounts for SA-522-DC so that $50,000 to $60,000 may be "dropped" into each account. POYNTER replies to SA-522-DC that he/she can have opened as many accounts as needed but that a business needs to be set up.  POYNTER states to SA-522-DC that he will try to get some hurricane "Katrina" work for SA-522-DC.  POYNTER

OFFICIAL USE ONLY
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

O F F I C I A L   U S E   O N L Y

| DEPARTMENT OF HOMELAND SECURITY ICE | PAGE    6 |
|---|---|
| | CASE NUMBER DC02BR06DC0006 |
| R E P O R T   O F   I N V E S T I G A T I O N   C O N T I N U A T I O N | REPORT NUMBER: 008 |

states that he can set them up in return for a fee.  POYNTER further states to SA-522-DC to get a real contract to show there is actually people out there working to show you have a "legitimate front. . . then you can do whatever you want to . . . you know what I'm saying, but you just have to watch yourself." SA-522-DC acknowledges this and POYNTER says, "I'll have someone set this up for you . . . just give me a name and a social security number . . . that way, if something goes down, it's that person . . . you ain't got nothing to lose. . . .no problem." The meeting concludes at approximately 2:33 p.m.

SAC/DC is coordinating with ICE Assistant Attach William Meadows in London, England, in order to repatriate the $37,500 in UC Government funds (minus wire transfer fee) from London back to the United States to an ICE-controlled bank account.

NLETS checks reveal the Chrysler PT Cruiser driven by SMITH is registered to:

James Smith, DOB:  12/03/1946
Height: 5'11"  Weight:  350 LBS
611 Elfin Avenue, Capitol Heights, Maryland, 20743

NLETS checks reveal the following information pertaining to the Jeep Cherokee:

```
P-536-887-149-822  SUS.REV: NO   PRIVACY: YES
NAME: WILLIAM DOUGLAS POYNTER        RACE: 1-BLACK              SEX: M
ADDR: 6707 ELDRIDGE ST               HGT: 5'10"  WGT: 185  DOB: 10/25/49
CITY: HYATTSVILLE                    COUNTY: PG     ST: MD   ZIP: 20784
TITLE-FLG/NONE
LIEN HOLDER: DC SERVICES NA LLC
ADDR: 400 HORSHAM RD PO BOX 600           DATE: 2005-08-14
CITY: HORSHAM              STATE: PA    ZIP: 19044
```

Investigation Continues.

O F F I C I A L   U S E   O N L Y
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

REQUESTED BY:  SOGGIN, STEVEN T
OFFICIAL USE ONLY

--------------------------------------------------------------------

| DEPARTMENT OF HOMELAND SECURITY          PAGE        1
ICE
T R A F F I C K E R S  F E E S/C O M M I S S I O N S

--------------------------------------------------------------------

ROI NUMBER: DC02BR06DC0006008  TITLE:  MONEY LAUNDERING BY CERTIFIED PUBLI
GOV INIT/PARTIC: X       INFO RECD,SEIZURE/DEBRIEF:
SOURCE OF INFORMATION: CI  RELIABILITY: 1 DATE OF INFO: 06/27/2006
SEIZURE NUMBER:
DRUG:       MONEY LAUNDERING: X

--------------------------------------------------------------------

AMOUNT LAUNDERED (US DOLLARS): $    37,500
COMMISSION CHARGED:      POINTS      AMOUNT     2500
DATE OF TRANSACTION:  06/27/2006
LAUNDERING METHOD: CODE: WT  CONVEYANCE/COMMODITY:  WIRE TRANSFER
ORIGIN:      US
TRANSIT:
DESTINATION:  GB